**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NUMBER 18-0229** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **DEVIN DEWAYNE WILLIAMS** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to suppress filed by Defendant Devin DeWayne Williams. [doc. # 20]. For reasons explained below, it is recommended that the motion be **DENIED**.

**Background**[1]

On September 24, 2017, at approximately 11:21 p.m., Officer Danny Coronado of the West Monroe Police Department initiated a traffic stop of a 2008 Chevrolet Malibu after observing a nonfunctioning license plate light. He made contact with the driver, Defendant Williams, who disclosed that he did not have a driver's license. While speaking with Williams, Officer Coronado used his flashlight to look inside the vehicle. He observed an unmarked, see-through prescription bottle containing a green leafy substance consistent with marijuana on the driver's side floorboard.

Officer Coronado called for backup, ordered Williams out of the vehicle, and placed him in handcuffs. He advised Williams of his *Miranda* rights and asked whether there were any illegal items in the vehicle. Williams responded that there were three grams of marijuana in the vehicle.

---

[1] The underlying facts in this case are taken from Defendant's motion to suppress [doc. # 20], the Government's opposition to Defendant's motion to suppress [doc. # 23], and testimony at the March 6, 2019 suppression hearing.

Officer Coronado then searched Williams and located in his front right shorts pocket a handgun magazine loaded with nine .25 caliber rounds. Officer Coronado asked Williams if he was in possession of a firearm, and Williams responded that there was a handgun under the driver's seat of the vehicle, which he carried for protection.

Officer Coronado then obtained Williams' consent to search the vehicle. During the search, Officer Coronado seized the unmarked prescription bottle and located a Beretta .25 caliber handgun under the driver's seat and three unopened packages of cigarillos in the center console. He called dispatch to run Williams' criminal history and confirmed that Williams was a convicted felon. Williams' vehicle was secured and left at the scene, and Williams was transported to the West Monroe Correctional Center and booked for no license plate light, no driver's license, possession of marijuana, possession of drug paraphernalia, and possession of a firearm by a convicted felon.

On August 23, 2018, a federal grand jury indicted Williams on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). [doc. # 1].

On February 12, 2019, Williams filed the instant motion to suppress evidence seized and statements obtained from him by the Government. Williams claims Officer Coronado had no probable cause or reasonable suspicion to believe a traffic offense had been committed in order to stop and search the vehicle he was driving. Williams also claims the incriminating statements he made following his arrest should be suppressed because they were not voluntary or elicited pursuant to valid a *Miranda* waiver. [doc. # 20].[2]

---

[2] Williams' attorney filed the operative motion to suppress, [doc. # 20]. On March 6, 2019, Williams filed an additional pro se motion to suppress related to this incident, [doc. # 24], which the undersigned struck because Williams was represented by counsel, and therefore could not properly file the motion.

On March 1, 2019, the Government filed its response claiming (1) the traffic stop was supported by probable cause; and (2) Williams' statements were made voluntarily. [doc. # 23].

A suppression hearing took place on March 6, 2019, with testimony from Officer Coronado. The matter is ripe.

## **Standard of Review**

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The protections of the Fourth Amendment extend to the states through the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207 (1979).

"The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (citations omitted). Generally, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search or seizure. This prohibition applies as well to the fruits of the illegally seized evidence." *United States v. Wallace*, 885 F.3d 806, 810 (5th Cir. 2018) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). The purpose of this exclusionary rule is to deter unlawful police conduct: by refusing to admit evidence gained as a result of conduct that deprives the defendant of some right, "the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of the accused." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)). However, the exclusionary rule is not without limits, and suppression of evidence should be "ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.*

**Discussion**

**I.     Traffic Stop**

A traffic stop constitutes a seizure under the Fourth Amendment, and its legality is analyzed under the framework set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, a court determines the reasonableness of a traffic stop by examining "whether the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (quoting *Terry*, 392 U.S. 19–20).

Under the first prong, a traffic stop is justified at its inception when an officer has a reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Id.* Reasonable suspicion exists when officer has "a particularized and objective basis for suspecting legal wrongdoing" based on the totality of the circumstances. *Id.* (internal quotations omitted). An officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.*

Further, the Supreme Court has noted that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of [a stop or] arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008) (citations omitted). An officer has probable cause to conduct a traffic stop when he personally

observes the defendant commit the traffic violation. *United States v. Rosales-Giron*, 592 F. App'x 246, 251 (5th Cir. 2014).

Under the second prong of *Terry*, the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). During the course of the stop, "a police officer may examine a driver's license and vehicle registration, run a computer check on the driver and the vehicle, and question the driver about a wide range of matters, including those unrelated to the purpose of a routine traffic stop." *Zavala*, 541 F.3d at 576. "These checks are routine and quickly performed." *Id.* at 577. Once these checks have been completed and come back clean, the detention should cease. *See Lopez-Moreno*, 420 F.3d at 431. However, "if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *Id.*

Williams claims Officer Coronado had no probable cause or reasonable suspicion to believe a traffic offense had been committed to support a traffic stop of the vehicle he was driving, and that the Government cannot prove the stop was justified at its inception. [doc. # 20 at 1-2].

The Government responds that the nonfunctioning license plate light provided Officer Coronado with a reasonable basis to believe that Williams was in violation of La. R.S. 32:304(C), which requires vehicles to have a tail lamp or separate light that illuminates "with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear." [doc. # 23 at 6]. Officer Coronado testified that he was following Williams' vehicle and was unable to read its license plate until his own vehicle's headlights illuminated the plate. He later checked the light and confirmed it was not working.

Further, Officer Coronado testified that while speaking with Williams, he observed in plain view, a see-through prescription bottle containing a green leafy substance, which, based on his training and experience, was consistent with marijuana.

In this case, the traffic stop was reasonable because Officer Coronado had probable cause to believe a traffic violation had occurred when he observed the nonfunctioning license plate light. Further, once he observed suspected marijuana in the vehicle, Officer Coronado had a particularized and objective basis for suspecting criminal activity, making it reasonable to extend the stop. Accordingly, the traffic stop did not violate Williams' Fourth Amendment rights.

## II. Search and Seizure

Williams does not explicitly claim the search of his vehicle and seizure of contraband violated his Fourth Amendment rights. Rather, he claims that because the initial stop was unreasonable, any evidence seized was obtained in violation of his constitutional rights and therefore, must be suppressed. However, as discussed above, *supra* Part I, the initial stop does not run afoul of the Fourth Amendment. Thus, the court need not address the legality of the subsequent search and seizure but will do so in the interest of thoroughness.

On review of the evidence presented, the undersigned finds the warrantless search of Williams' vehicle and subsequent seizure of contraband were proper.

### A. Plain View Doctrine

"[U]nder certain circumstances the police may seize evidence in plain view without a warrant." *Horton v. California*, 496 U.S. 128, 134 (1990). For the plain view doctrine to apply, (1) the officer must be lawfully present at the place where the evidence can be plainly viewed; (2) the "incriminating character" of the item must be "immediately apparent"; and (3) the officer must "have a lawful right of access to the object itself." *Id.* at 136–37.

Here, the plain view doctrine justifies the seizure of the contraband. First, due to the traffic violation, Officer Coronado was lawfully present at the vehicle. Second, Officer Coronado testified that he observed a green leafy substance inside the prescription bottle. Based on his training and experience, he concluded the substance was marijuana, thus demonstrating the incriminating character of the item was immediately apparent. The fact that he then called for backup lends credibility to his claim that he could see the marijuana inside the bottle. Further, his use of a flashlight to illuminate the interior of the vehicle during the stop did not encroach on any Fourth Amendment right. *Texas v. Brown*, 460 U.S. 730, 739–40 (1983). Third, Officer Coronado was authorized to access the item once he observed it in connection with the lawful stop of the vehicle.

B. Automobile Exception

"Law enforcement may conduct a warrantless search of an automobile if (1) the officer conducting the search had probable cause to believe that the vehicle in question contained property that the government may properly seize; and (2) exigent circumstances justified the search. In a vehicle stop on a highway, the fact of the automobile's potential mobility supplies the requisite exigency." *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010) (citations and internal quotation marks omitted). Probable cause to search the vehicle "depends on the totality of the circumstances viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search." *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995) (internal quotations omitted). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 687 (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).

Probable cause to search the vehicle arose once Officer Coronado identified the green leafy substance as marijuana and when Defendant admitted that there were three grams of marijuana in the vehicle. Additionally, Officer Coronado's testimony that he located a handgun magazine in Williams' pocket during a pat down search and Williams' statement that there was a handgun under the driver's seat support a probable cause determination. Thus, the warrantless search of the vehicle and seizure of contraband satisfied the automobile exception.

C. Consent

Officer Coronado testified that Williams granted him consent to search the vehicle. Williams does not dispute that he provided consent or claim the search exceeded the scope of the consent. Although consent to search a vehicle is not required when probable cause exists, *see Zavala*, 541 F.3d at 575–76, the undersigned notes the consent was voluntary and provides an additional justification for the vehicle search.

### III. Incriminating Statements

Certain warnings must be given before a statement made during a custodial interrogation can be admitted in evidence. *Dickerson v. United States*, 530 U.S. 428, 431–32 (2000) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ("[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.")). A custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Prior to any questioning, a person must be warned (1) of his right to remain silent; (2) that any statement he makes can be used as evidence against him; and (3) of his right to attorney, either retained or appointed. *Id.*

A suspect can waive his *Miranda* rights "provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Id.* at 444–45. A waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins*, 560 U.S. 370, 382–83 (2010) (citations omitted). On a motion to suppress, the prosecution bears the burden of proving by a preponderance of the evidence a *Miranda* waiver and that the incriminating statement was made voluntarily. *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004).

Williams claims the Government cannot prove a valid waiver or that his post-arrest statements were made voluntarily. [doc. # 20 at 3]. The undersigned disagrees. Officer Coronado testified that he advised Williams of his *Miranda* warnings after detaining him outside the vehicle and that Williams stated he understood them. Officer Coronado then asked Williams about illegal items in the vehicle. Williams answered that there were three grams of marijuana inside the vehicle that he planned to smoke while he recorded music and admitted he had a handgun under the driver's seat that he carried for protection. Williams also consented to a search of the vehicle. There is no indication that Williams was intimidated, coerced, or deceived into making any statements. Therefore, the undersigned finds that Williams voluntarily waived his *Miranda* rights when he spoke with Officer Coronado. Accordingly, the statements he made should not be suppressed.

## Conclusion

For the foregoing reasons,

9

**IT IS RECOMMENDED** that Defendant's motion to suppress [doc. # 20] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 11th day of March 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE